**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JOHN DOE 1, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>KASHYAP P. PATEL, *et al.*,<br><br>Defendants. | Case No. 1:26-cv-00959-JMC |
| JAMIE GARMAN, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>KASHYAP P. PATEL, *et al.*,<br><br>Defendants. | Case No. 1:26-cv-1086-JMC |

**Defendants' Combined Memorandum in Support of Their Motions to Dismiss the *Doe* and *Garman* Complaints for Lack of Subject-Matter Jurisdiction and Failure to State a Claim for Relief**

BRETT A. SHUMATE
Assistant Attorney General

CHRISTOPHER HALL
Assistant Branch Director

ISAAC C. BELFER (D.C. Bar No. 1014909)
Trial Attorney
Federal Programs Branch
Civil Division
U.S. Department of Justice
1100 L Street, NW
Washington, DC 20005
(202) 305-7134
(202) 514-8742 (fax)
Isaac.C.Belfer@usdoj.gov

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................. 1

BACKGROUND............................................................................................................................... 2

    I.      Factual Background .................................................................................................. 2

    II.    Procedural Background............................................................................................ 3

LEGAL STANDARD ........................................................................................................................ 3

ARGUMENT .................................................................................................................................... 4

    I.      Plaintiffs Fail to State a First Amendment Claim.................................................... 4

    II.    Plaintiffs Fail to State a Fifth Amendment Claim Based on Deprivation of a
          Property Interest...................................................................................................... 6

    III.   Plaintiffs Fail to State a Fifth Amendment Claim Based on Deprivation of a
          Liberty Interest...................................................................................................... 11

          A.      Plaintiffs' "Reputation Plus" Theory Fails ............................................... 11

          B.      Plaintiffs' "Stigma Plus" Theory Fails ...................................................... 16

    IV.   The Court Lacks Jurisdiction over the *Garman* Plaintiffs' *Ultra Vires* and
          Legal Nullity Claim, and the *Garman* Plaintiffs also Fail to State a Claim for
          Relief.................................................................................................................... 18

    V.    The *Garman* Plaintiffs' Declaratory Judgment Act Claim
          Should Be Dismissed ........................................................................................... 22

CONCLUSION............................................................................................................................... 22

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Am. Mfrs. Mut. Ins. Co. v. Sullivan*,
    526 U.S. 40 (1999).................................................................................................. 7

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)............................................................................................ 4, 6

*Bd. of Regents of State Colls. v. Roth*,
    408 U.S. 564 (1972).......................................................................................... 7, 15

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)............................................................................................ 4, 6

*Bloch v. Powell*,
    348 F.3d 1060 (D.C. Cir. 2003)......................................................................... 8, 10

*Brownback v. King*,
    592 U.S. 209 (2021).............................................................................................. 4

*Changji Esquel Textile Co. v. Raimondo*,
    40 F.4th 716 (D.C. Cir. 2022)......................................................................... 19, 20

*Crooks v. Mabus*,
    845 F.3d 412 (D.C. Cir. 2016)......................................................................... 8, 10

*DaimlerChrysler Corp. v. Cuno*,
    547 U.S. 332 (2006).............................................................................................. 3

*Daney v. Dep't of the Interior*,
    25 F. App'x 994 (Fed. Cir. 2001) ......................................................................... 8

*Esparraguera v. Dep't of the Army*,
    101 F.4th 28 (D.C. Cir. 2024)............................................................................... 7

*Farah v. Esquire Mag.*,
    736 F.3d 528 (D.C. Cir. 2013).......................................................................... 13, 15

*Filebark v. U.S. Dep't of Transp.*,
    555 F.3d 1009 (D.C. Cir. 2009)....................................................................... 19, 20

*Flaningam v. Cnty. of Winnebago*,
    243 F. App'x 171 (7th Cir. 2007) ......................................................................... 8

*Fornaro v. James*,
  416 F.3d 63 (D.C. Cir. 2005) ............................................................................ 19

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
  561 U.S. 477 (2010) .......................................................................................... 21

*Garrow v. Gramm*,
  856 F.2d 203 (D.C. Cir. 1988) ............................................................................ 8

*Grosdidier v. Chairman, Broad. Bd. of Governors*,
  560 F.3d 495 (D.C. Cir. 2009) ..................................................................... 19, 20

*Hall v. Ford*,
  856 F.2d 255 (D.C. Cir. 1988) ....................................................................... 7, 10

*Harmon v. Liss*,
  116 A.2d 693 (D.C. 1955) ................................................................................. 12

*Harrison v. Bowen*,
  815 F.2d 1505 (D.C. Cir. 1987) .............................................................. 12, 14, 18

*Houston Cmty. Coll. Sys. v. Wilson*,
  595 U.S. 468 (2022) ............................................................................................ 5

*In re Grand Jury Investigation*,
  315 F. Supp. 3d 602 (D.D.C. 2018) ................................................................... 21

*Jefferson v. Harris*,
  170 F. Supp. 3d 194 (D.D.C. 2016) .............................................................. *passim*

*Kartseva v. U.S. Dep't of State*,
  37 F.3d 1524 (D.C. Cir. 1994) ........................................................................... 17

*Ky. Dep't of Corr. v. Thompson*,
  490 U.S. 454 (1989) ....................................................................................... 8, 10

*Lamb v. Holder*,
  82 F. Supp. 3d 416 (D.D.C. 2015) ..................................................................... 20

*Langeman v. Garland*,
  88 F.4th 289 (D.C. Cir. 2023) .................................................................. 13, 15, 18

*Mazaleski v. Treusdell*,
  562 F.2d 701 (D.C. Cir. 1977) .................................................................. 14, 15, 18

iii

*McCormick v. District of Columbia,*
752 F.3d 980 (D.C. Cir. 2014) ................................................................ 11, 12, 18

*Metz v. BAE Sys. Tech. Sols. & Servs.,*
774 F.3d 18 (D.C. Cir. 2014) .............................................................................. 22

*O'Donnell v. Barry,*
148 F.3d 1126 (D.C. Cir. 1998) ............................................... 12, 14, 17, 18

*Printz v. United States,*
521 U.S. 898 (1997) ............................................................................................ 21

*Seila Law LLC v. Consumer Fin. Prot. Bureau,*
591 U.S. 197 (2020) ............................................................................................ 21

*Steel Co. v. Citizens for a Better Env't,*
523 U.S. 83 (1998) ................................................................................................ 3

*Stovell v. James,*
810 F. Supp. 2d 237 (D.D.C. 2011) ................................................................... 12

*Thompson v. District of Columbia,*
530 F.3d 914 (D.C. Cir. 2008) ............................................................................. 7

*United States v. Fausto,*
484 U.S. 439 (1988) ............................................................................................ 19

*Wilbur v. United States ex rel. Barton,*
46 F.2d 217 (D.C. Cir. 1930) ............................................................................. 21

*Wilcox v. Jackson,*
38 U.S. (13 Pet.) 498 (1839) .............................................................................. 21

*Wolsey v. Chapman,*
101 U.S. 755 (1879) ...................................................................................... 21, 22

**Constitutional Provisions**

U.S. Const., art. II, § 2, cl. 2 ............................................................................... 19

**Statutes**

5 U.S.C. § 2108(3) ................................................................................................. 8

5 U.S.C. § 7703 .................................................................................................... 19

5 U.S.C. § 7511 ..................................................................................................... 8

5 U.S.C. § 7511(a)(1)(B) ................................................................................................ 8

5 U.S.C. § 7511(b)(8) ...................................................................................................... 8

5 U.S.C. § 7513 ................................................................................................................ 8

**Other Authorities**

Restatement (Second) of Torts § 564 cmt. a ................................................................... 13

**INTRODUCTION**

The *Doe* and *Garman* Plaintiffs are former employees of the Federal Bureau of Investigation ("FBI") who argue they were removed in violation of the U.S. Constitution. In their dismissal letters, FBI Director Kash Patel explained that Plaintiffs "exercised poor judgment and a lack of impartiality in carrying out duties, leading to the political weaponization of the government." *Doe* Compl. ¶¶ 95–96, 109, ECF No. 1; *Garman* Compl. ¶ 174, ECF No. 1. This case does not ask the Court to decide whether Plaintiffs' removals were warranted. Instead, the question now before the Court is whether Plaintiffs' complaints plausibly allege a violation of the constitutional provisions Plaintiffs invoke. The answer is no.

Plaintiffs cannot show a First Amendment violation by speculating that they were removed because of their actual or perceived lack of support for the President. This theory lacks support in Plaintiffs' factual allegations, which show that Director Patel removed Plaintiffs based on how they performed their assigned duties as FBI agents.

Plaintiffs also fail to show they were deprived of a property interest without procedural due process in violation of the Fifth Amendment. Plaintiffs had no protected property interest in continued FBI employment because they were at-will employees who lacked for-cause removal protection under the governing statutory scheme, the Civil Service Reform Act of 1978 ("CSRA"), or any other source of law. Moreover, Plaintiffs were removed under the FBI's summary dismissal procedure, which gives the FBI Director significant discretion to determine whether compelling or exigent considerations require that an FBI agent be removed. Plaintiffs had no objective basis to believe they would continue to be employed indefinitely.

In addition to alleging the deprivation of a property interest, Plaintiffs claim they were deprived of a liberty interest in violation of the Fifth Amendment based on alleged harm to their reputations or stigma from Defendants' actions. This claim fails because Defendants did not

1

publicly disclose Plaintiffs' removal letters, and Defendants' public statements did not identify Plaintiffs. Furthermore, Plaintiffs have not shown that any allegedly defamatory statements caused their removals or have hampered their future employment prospects. Defendants have not barred Plaintiffs from future employment with the federal government and have not interfered with Plaintiffs' ability to obtain employment with state or local governments or in the private sector. Indeed, all the *Garman* Plaintiffs have since started new jobs.

The *Garman* Plaintiffs, but not the *Doe* Plaintiffs, assert an *ultra vires* claim. Under the CSRA, the Court lacks jurisdiction to review this claim. And even if the Court reaches the merits, the *Garman* Plaintiffs fail to state a claim because they do not identify any statute that was violated.

Finally, the *Garman* Plaintiffs assert a "Declaratory Judgment Act" claim. But the Declaratory Judgment Act does not give rise to a cause of action; it simply provides for a particular type of remedy in civil cases.

In sum, each of Plaintiffs' claims is deficient. The Court should dismiss the *Garman* Plaintiffs' *ultra vires* claim for lack of subject-matter jurisdiction or, if the Court reaches the merits, failure to state a claim. The remaining counts in the *Doe* and *Garman* complaints should be dismissed for failure to state a claim.

BACKGROUND

## I.    Factual Background

The *Doe* and *Garman* Plaintiffs are former FBI employees. *Doe* Compl. ¶ 1; *Garman* Compl. ¶ 1. Among other assignments, they had all been assigned to the Arctic Frost investigation, "an investigation into a suspected conspiracy to illegally overturn the results of the 2020 Presidential election." *Doe* Compl. ¶ 1; *see Garman* Compl. ¶¶ 4–9. In October and November 2025, they were summarily dismissed from the FBI. *Doe* Compl. ¶ 4; *Garman*

2

Compl. ¶¶ 4–9. They each received a letter from FBI Director Kash Patel that stated:

> This document provides official notice that you are being summarily dismissed from your position at the Federal Bureau of Investigation, and removed from the federal service under my authority as the FBI Director, effective immediately.
>
> You have exercised poor judgment and a lack of impartiality in carrying out duties, leading to the political weaponization of the government.
>
> Pursuant to Article II of the United States Constitution and the laws of the United States, your employment with the Federal Bureau of Investigation is hereby terminated.

*Doe* Compl. ¶¶ 95–96, 109; *Garman* Compl. ¶ 174.

## II.    Procedural Background

The *Doe* Plaintiffs filed suit on March 19, 2026, alleging their removals violated the First and Fifth Amendments to the U.S. Constitution. *Doe* Compl. The *Garman* Plaintiffs filed suit on March 31, 2026, challenging their removals on largely the same grounds. Because *Doe* and *Garman* involve similar questions of law and were filed close together in time, the parties requested that the Court align the briefing schedules for Defendants' motions to dismiss in each case. *Doe*, ECF No. 17; *Garman*, ECF No. 27, at 2. Defendants now file this combined memorandum in support of their motions to dismiss the *Doe* complaint for failure to state a claim and the *Garman* complaint for lack of subject-matter jurisdiction and failure to state a claim.

### LEGAL STANDARD

Subject-matter jurisdiction must "be established as a threshold matter." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998). The Court is "presume[d]" to "lack jurisdiction" unless Plaintiffs meet their "burden of establishing it." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006) (quotation omitted). When, as here, defendants bring a facial challenge to subject-matter jurisdiction under Rule 12(b)(1), the Court examines whether the

3

non-conclusory, non-speculative allegations in the complaint, on their face, "plausibly allege" subject-matter jurisdiction. *Brownback v. King*, 592 U.S. 209, 217 (2021).

Under Rule 12(b)(6), the Court must dismiss the complaint unless Plaintiffs have "state[d] a plausible claim for relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). They must plead sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level."). "Threadbare recitals of the elements of a cause of action" or "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" do not suffice. *Iqbal*, 556 U.S. at 678. The Court accepts as true Plaintiffs' "well-pleaded factual allegations" but not "conclusory statements" or "legal conclusions." *Id.* at 678–79.

**ARGUMENT**

### I. Plaintiffs Fail to State a First Amendment Claim

Count I of the *Doe* and *Garman* complaints alleges Plaintiffs were removed based on their actual or perceived political affiliation in violation of the First Amendment. *Doe* Compl. ¶¶ 129–34; *Garman* Compl. ¶¶ 204–09. But Plaintiffs do not allege they were removed based on their actual or perceived affiliation with any political party or organization. Nor do they claim they were removed based on how they voted or which candidates they supported in any election.

Instead, Plaintiffs vaguely assert they were removed "based on a perception that [they] were not political supporters of President Trump." *Doe* Compl. ¶ 132; *see Garman* Compl. ¶¶ 1, 208–09. The complaints' factual allegations, however, do not bear this out. And even if they allowed the *possibility* that this was part of the reason for Plaintiffs' removals, they "have not nudged [Plaintiffs' theory] across the line from conceivable to plausible," and thus Plaintiffs' First Amendment claims "must be dismissed." *Twombly*, 550 U.S. at 570.

4

Plaintiffs' summary dismissal letters explained that they were being removed because of how they performed their assigned duties as FBI agents: they "exercised poor judgment and a lack of impartiality in carrying out duties, leading to the political weaponization of the government." *Doe* Compl. ¶¶ 95–96, 109; *Garman* Compl. ¶ 174.[1] This explanation aligns with Director Patel's other statements. For example, on August 20, 2025, Director Patel said he had removed FBI employees who had "weaponized" law enforcement, "creating a crime where one did not exist." *Garman* Compl. ¶ 138. Similarly, on October 7, 2025, he explained he had removed FBI agents "based on the agents' 'weaponization'" of the government and their "'politiciz[ed]' work at the FBI." *Doe* Compl. ¶ 83. On October 23, 2025, he said Arctic Frost records "show[ed] weaponization and politicization." *Id.* ¶ 87. And on January 12, 2026, he said he had removed "corrupt" FBI agents to end "weaponized law enforcement." *Id.* ¶ 118.

Thus, Director Patel's consistent justification for removing agents who had worked on Arctic Frost was that they had weaponized law enforcement and performed their duties in a politicized manner. Even if Plaintiffs disagree with this justification, none of their factual allegations calls into question whether this was Director Patel's reason for removing them. Although certain Plaintiffs' personnel records reflected that they had been removed based on Director Patel's authority under Article II of the U.S. Constitution, *Doe* Compl. ¶¶ 98–100, 112–13, that says nothing about Director Patel's reasons for removing Plaintiffs and is fully consistent with the justification in the summary dismissal letters.

Plaintiffs' theory that they were removed because they "were not political supporters of

---

[1] Plaintiffs do not allege that their performance of their duties as FBI agents constituted "protected speech" under the First Amendment or that they were removed in retaliation for engaging in protected speech. *Houston Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468, 474 (2022); *see* Doe Compl. ¶¶ 129–34; *Garman* Compl. ¶¶ 204–09.

President Trump," *Doe* Compl. ¶ 132; *see Garman* Compl. ¶¶ 1, 208–09, has no support in their factual allegations. Plaintiffs do not allege Director Patel ever said he was removing Plaintiffs for that reason. Nor do they identify any other statements or actions by Director Patel "that allow[] the court to draw the reasonable inference" that Plaintiffs were removed because they did not support the President. *Iqbal*, 556 U.S. at 678. Even if Plaintiffs were removed because they "had worked on the cases against President Trump," *Garman* Compl. ¶ 135, that reason is based on Plaintiffs' actions in carrying out their assigned duties as FBI agents, not whether they supported the President. Lacking any factual support, Plaintiffs can only speculate that Director Patel removed them because they did not support the President, which is insufficient to state a claim. *Twombly*, 550 U.S. at 555.

The statements of other governmental actors cited in the complaints do not cure this defect. For example, although the President and Attorney General Bondi allegedly criticized certain FBI agents, *id.* ¶¶ 70–71, 80, 117, there is no allegation that they said that agents assigned to Arctic Frost (much less Plaintiffs in particular) do not support the President or that they ordered Director Patel to remove agents assigned to Arctic Frost on that basis. Likewise, there is no allegation that Director Patel removed Plaintiffs based on any directive from the President or Attorney General to dismiss employees who did not support the President.

In sum, Plaintiffs offer no factual allegations "that allow[] the court to draw the reasonable inference" that Director Patel removed Plaintiffs because of lack of support for President Trump. *Iqbal*, 556 U.S. at 678. Plaintiffs' First Amendment claims should therefore be dismissed.

## II.     Plaintiffs Fail to State a Fifth Amendment Claim Based on Deprivation of a Property Interest

Count II of the *Doe* and *Garman* complaints alleges Plaintiffs "had a protected property

interest in [their] continued employment" as FBI Special Agents, *Doe* Compl. ¶ 137; *see Garman* Compl. ¶ 215, and that they were deprived of this property interest without procedural due process in violation of the Fifth Amendment to the U.S. Constitution, *Doe* Compl. ¶¶ 135–38; *Garman* Compl. ¶¶ 210–16. This claim fails, however, because Plaintiffs had no protected property interest in their continued employment at the FBI.

"The first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest . . . . Only after finding the deprivation of a protected interest do [courts] look to see if the [government's] procedures comport with due process." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999) (internal citation omitted). To have such an interest in a benefit, "a person clearly must have . . . more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). "For [an] employee to have a constitutionally protected property interest in his job," he must prove an "objectively reasonable expectation that he [was] entitled to retain it." *Hall v. Ford*, 856 F.2d 255, 266 (D.C. Cir. 1988).

At-will government employees lack a property interest in their jobs. "Most cases involving government employees fall into one of two categories: terminable at will or terminable only for cause." *Id.* at 265. "Those who are terminable at will have no property interest because there is no objective basis for believing that they will continue to be employed indefinitely." *Id.*; *see also Esparraguera v. Dep't of the Army,* 101 F.4th 28, 33 (D.C. Cir. 2024); *Thompson v. District of Columbia*, 530 F.3d 914, 918 (D.C. Cir. 2008) (an employee has a property interest in a government position only if, under the law, "he could be removed only 'for cause'" (citation omitted)).

The conditions under which courts hold that government employees have for-cause

removal protection, rather than at-will employment, are narrow. The D.C. Circuit has observed that "our attention has yet to be called to any case where a court has held that a government employee has a protected property interest in employment where language qualifying discharge for 'cause' or for comparable reasons, is not present." *Garrow v. Gramm*, 856 F.2d 203, 206–07 (D.C. Cir. 1988). "To create a protected property interest, regulations must limit discretion by 'explicitly mandatory language,' i.e., specific directives to the decisionmaker that if the regulations' substantive predicates are present, a particular outcome must follow." *Bloch v. Powell*, 348 F.3d 1060, 1069 (D.C. Cir. 2003) (quoting *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 463 (1989)). Put otherwise, a "'claim of entitlement' is not viable when a government agency wields significant or unfettered discretion in determining whether to award or rescind a particular benefit." *Crooks v. Mabus*, 845 F.3d 412, 419 (D.C. Cir. 2016). Finally, handbooks, regulations, or policies that use permissive language when discussing potential grounds for dismissal do not limit the bases on which an employer may remove an employee and, thus, do not create a property interest in continued employment. *Flaningam v. Cnty. of Winnebago*, 243 F. App'x 171, 173–74 (7th Cir. 2007); *see also Daney v. Dep't of the Interior*, 25 F. App'x 994, 996 (Fed. Cir. 2001).

Contrary to Plaintiffs' assertions, *Doe* Compl. ¶ 137; *Garman* Compl. ¶ 65, they were at-will employees who did not have for-cause removal protection. No statute or regulation states they could be discharged only for "cause." *See Garrow*, 856 F.2d at 206–07. Although the CSRA provides removal protections for many career federal employees, 5 U.S.C. §§ 7511, 7513, it generally excludes FBI employees, *id.* § 7511(b)(8). The CSRA extends for-cause removal protection to certain military veterans serving in the FBI who qualify as "preference-eligible," *see id.* §§ 2108(3), 7511(a)(1)(B), (b)(8); *Garman* Compl. ¶ 68, but Plaintiffs concede they were

8

not preference-eligible, *Doe* Compl. ¶ 78; *Garman* Compl. ¶ 20. Thus, Plaintiffs did not have removal protection under the CSRA.

Lacking any statutory entitlement to for-cause removal protection, Plaintiffs claim "the rules and understandings fostered by the FBI justified a legitimate claim of entitlement to continued employment absent 'sufficient cause.'" *Doe* Compl. ¶ 137 (quotations omitted); *see Garman* Compl. ¶ 215. Not so. Each Plaintiff was removed under Director Patel's summary dismissal authority. *Doe* Compl. ¶¶ 95–96, 109; *Garman* Compl. ¶ 174. According to the FBI's *Office of Professional Responsibility Policy Guide* ("*OPR Policy Guide*"), "[w]hen: (a) the safety of the public; (b) the safety of fellow employees; (c) national security interests; or (d) other compelling or exigent considerations are at stake, the Director . . . may summarily dismiss an employee." *Doe* Compl. ¶ 53; *Garman* Compl. ¶ 89. The *OPR Policy Guide* identifies factors the agency may consider and examples of when summary dismissal may be warranted, but explains that "[t]hese factors and examples are illustrative, not exhaustive, and the Bureau retains the discretion to consider any factors relevant to the case." *Doe* Compl. ¶ 54; *Garman* Compl. ¶ 91. "With the exception of those who are preference-eligible, FBI employees subject to summary dismissal may not (a) review the [administrative inquiry file]; (b) prepare a written response; or (c) make an oral presentation to the" Assistant Director, OPR, and "[s]ummary dismissals are not subject to internal appeal." *Doe* Compl. ¶ 53 (footnote omitted).[2]

This policy plainly disproves Plaintiffs' assertion that "[t]he summary termination provision does not authorize summary dismissal outside the context of specifically enumerated instances of egregious misconduct or exigent circumstances that have been the subject of an

---

[2] Although Plaintiffs challenge their removals on constitutional grounds, they do not assert a claim for violation of any statute, regulation, or agency policy. Nor could they. *See infra* pp. 19–20.

9

internal investigation where the subject has received some due process." *Garman* Compl. ¶ 95; *see Doe* Compl. ¶ 55. The Director need not await an internal investigation but "may summarily dismiss an employee" whenever he determines, among other things, that "compelling or exigent considerations are at stake," considering "any factors" he believes are relevant. *Doe* Compl. ¶¶ 53–54; *Garman* Compl. ¶¶ 90–91. The policy's examples of when summary dismissal is warranted "are illustrative, not exhaustive." *Doe* Compl. ¶ 54; *Garman* Compl. ¶ 91. And the policy expressly disclaims procedural protections such as "prepar[ing] a written response," "mak[ing] an oral presentation to the" adjudicator, and internal appeal. *Doe* Compl. ¶ 53.

The FBI's summary dismissal policy does not "create a protected property interest" because it does not "limit discretion by 'explicitly mandatory language.'" *Bloch*, 348 F.3d at 1069 (quoting *Thompson*, 490 U.S. at 463). It provides that the Director "*may* summarily dismiss an employee" in certain circumstances, *Doe* Compl. ¶ 53 (emphasis added); this is not a "specific directive[] to the decisionmaker that if the regulations' substantive predicates are present, a particular outcome must follow." *Bloch*, 348 F.3d at 1069 (quoting *Thompson*, 490 U.S. at 463). Moreover, the Director has "significant" discretion, *Crooks*, 845 F.3d at 419, to determine whether "compelling or exigent considerations" warrant summary dismissal, considering "any factors" he believes are relevant, *Doe* Compl. ¶¶ 53–54. Thus, given the FBI Director's summary dismissal authority, Plaintiffs had "no objective basis for believing that they will continue to be employed indefinitely." *Hall*, 856 F.2d at 265. They were at-will employees with no "constitutionally protected property interest" in continued FBI employment. *Id.* at 265–66.

Plaintiffs' citation of disciplinary procedures other than summary dismissal, *Doe* Compl. ¶¶ 39–61; *Garman* Compl. ¶¶ 62–100, is inapposite. For example, it is irrelevant that FBI policy sets out certain disciplinary procedures for misconduct. *Doe* Compl. ¶¶ 46–50. Such procedures

10

are independent of the summary dismissal procedure used for Plaintiffs' removals and do not constrain the Director's summary dismissal authority. Likewise, it is irrelevant that Director Patel allegedly testified that "[t]he only way people get terminated at the FBI is if they fail to meet the muster of the job and their duties." *Id.* ¶ 137. This statement did not disclaim the Director's summary dismissal authority or limit his discretion to determine when "compelling or exigent considerations" warrant removal. *Id.* ¶¶ 53–54. As discussed above, moreover, Plaintiffs were removed based on how they performed their assigned duties, consistent with Director Patel's testimony. *See supra* pp. 5–6.

In sum, Plaintiffs were at-will employees with no protected property interest in continued FBI employment. Thus, Count II of the *Doe* and *Garman* complaints should be dismissed.

### III. Plaintiffs Fail to State a Fifth Amendment Claim Based on Deprivation of a Liberty Interest

Counts III and IV of the *Doe* Complaint and Count III of the *Garman* Complaint claim Plaintiffs were deprived of a liberty interest without procedural due process based on a "reputation plus" theory and a "stigma plus" theory. *Doe* Compl. ¶¶ 139–46; *Garman* Compl. ¶¶ 217–27. But "the availability of such an action in the case of an at-will employee is at best very narrow," *McCormick v. District of Columbia*, 752 F.3d 980, 987 (D.C. Cir. 2014), and both of Plaintiffs' theories are deficient.

#### A. Plaintiffs' "Reputation Plus" Theory Fails

To plead a "reputation plus" claim, "the plaintiff must meet three requirements": (1) "the government's defamation resulted in a harm to some interest beyond reputation, such as a loss of present . . . government employment," (2) "the government has actually stigmatized his or her reputation," and (3) "the stigma has hampered future employment prospects." *Jefferson v. Harris*, 170 F. Supp. 3d 194, 205 (D.D.C. 2016) (quotations omitted) (alterations in original).

11

The defamatory statement and the adverse employment action must "occur[] together."
*O'Donnell v. Barry*, 148 F.3d 1126, 1140 (D.C. Cir. 1998) ("only defamation that is *accompanied by a discharge from government employment or at least a demotion in rank and pay* is actionable" (quotations omitted)).

Plaintiffs fail to meet these requirements. At the outset, the Court should consider only Defendants' statements that "occurred together" with Plaintiffs' removals. *O'Donnell*, 148 F.3d at 1140. Thus, the only potentially relevant statements are Defendants' statements on October 7, 2025, when Plaintiff Ball was removed. Garman Compl. ¶ 9. Plaintiffs have not identified any allegedly defamatory statements by Defendants that "occurred together" with the removals of John Doe 1 and Garman on October 31, 2025, or the removals of John Doe 2 and Toleman on November 4, 2025. *O'Donnell*, 148 F.3d at 1140; *Doe* Compl. ¶¶ 10, 17; *Garman* Compl. ¶¶ 5, 7.

Even considering all of Defendants' alleged statements, Plaintiffs have not shown Defendants defamed them. *See O'Donnell*, 148 F.3d at 1140 (a "reputation-plus" procedural due process claim requires the plaintiff to show defamation). Although Defendants' public statements[3] referred generally to the Arctic Frost investigation or FBI agents who had weaponized law enforcement, they did not identify Plaintiffs. Thus, they did not "actually stigmatize[] [*Plaintiffs'*] reputation," *Jefferson*, 170 F. Supp. 3d at 205 (quotations omitted), and the public could not have understood the statements "as referencing" Plaintiffs, *Stovell v. James*, 810 F. Supp. 2d 237, 248–49 (D.D.C. 2011); *see Harmon v. Liss*, 116 A.2d 693, 695 (D.C. 1955) (the plaintiff "need not be specifically named in the defamatory language" when "the surrounding circumstances . . . leave no doubt in the mind of the hearer as to his identity");

---

[3] Plaintiffs' dismissal letters cannot have defamed Plaintiffs because they were not disseminated to the public. *See McCormick*, 752 F.3d at 988; *Harrison v. Bowen*, 815 F.2d 1505, 1518 (D.C. Cir. 1987).

Restatement (Second) of Torts § 564 cmt. a ("It is necessary that the recipient of the defamatory communication understand it as intended to refer to the plaintiff."). Similarly, Plaintiffs cannot show they were "the subject of" Defendants' statements, and the statements could not have "injure[d] the plaintiff[s] in [their] trade, profession or community standing, or . . . lower[ed] [them] in the estimation of the community." *Farah v. Esquire Mag.*, 736 F.3d 528, 533–34 (D.C. Cir. 2013); *see Langeman v. Garland*, 88 F.4th 289, 296 (D.C. Cir. 2023) (rejecting reputation-plus claim where plaintiff did "not assert facts demonstrating that the FBI actually revealed his identity in any defamatory public statement").

Plaintiffs' allegations that certain of their names were publicly disclosed do not cure this defect. On October 29, 2025, John Doe 1's name was allegedly made public in connection with Arctic Frost investigation documents released by the Senate Judiciary Committee (not by Defendants). *Doe* Compl. ¶ 89. And on October 31, 2025, or March 24, 2026 (*compare Garman* Compl. ¶ 5, *with id.* ¶ 163(l)), Senator Grassley (again, not Defendants) "released two grand jury subpoenas for Defendant Patel's phone records," and "Garman's name is not redacted in those documents." *Garman* Compl. ¶ 163(l). Plaintiffs do not allege these documents connected Garman to Arctic Frost. But even if they did, neither this disclosure of Garman's name nor the disclosure of John Doe 1's name—both by nonparties—show that any of Defendants' statements defamed them.

Prior to these disclosures, the public would not have associated John Doe 1 or Garman with any public statements about Arctic Frost or removed FBI agents. And Plaintiffs do not identify any public statements postdating the disclosure of John Doe 1's and Garman's names that could have defamed them. On January 12, 2026, Director Patel allegedly replied to the President's Truth Social post about Arctic Frost by stating: "Thank you Mr. President. Under

13

your leadership, this FBI found the corrupt actors and terminated their employment last year. America voted for the end of weaponized law enforcement, and that's what we are delivering." *Doe* Compl. ¶ 118. But the public could not have associated this post with John Doe 1 or Garman because it would not have known whether they were among the referenced "corrupt actors" whose employment was "terminated." Similarly unavailing is the alleged March 26, 2026, statement by Deputy Attorney General Todd Blanche: "When it comes to the FBI . . . Director Patel has cleaned house there too. There isn't a single man or woman with a gun, federal agent, still in that organization that had anything to do with the prosecution of President Trump." *Garman* Compl. ¶ 157. Even if the public knew Garman[4] was associated "with the prosecution of President Trump," Blanche's statement simply reports his removal and is not in any way defamatory. *See O'Donnell*, 148 F.3d at 1140.

Additionally, stating Plaintiffs performed their duties in a weaponized or politicized way does not rise to the level of a deprivation of a liberty interest. Courts have found allegations of "highly unethical conduct," "disruptive conduct," "improper and substandard job performance," and "incompetence, neglect of duty and malfeasance in office," do not implicate plaintiffs' constitutional liberty interests. *Mazaleski v. Treusdell*, 562 F.2d 701, 714 (D.C. Cir. 1977) (citations omitted) (collecting cases). Allegations that Plaintiffs performed their duties in a weaponized or politicized way would, at most, be an allegation of "highly unethical conduct," which is insufficient because it relates to the "situational" issue of Plaintiffs' "job performance" rather than any "inherent" personal quality of Plaintiffs. *Harrison*, 815 F.2d at 1518; *see Mazaleski*, 562 F.2d at 714. The allegation of weaponization or politicization also "is not

---

[4] Blanche's statement postdated the filing of the *Doe* complaint on March 19, 2026, and thus cannot be considered in evaluating whether the *Doe* complaint plausibly alleges defamation.

14

actionable in defamation" because it is "so imprecise or subjective that it is not capable of being proved true or false." *Farah*, 736 F.3d at 534–35.

Even if any of Defendants' statements were sufficiently defamatory, they have not "resulted in a harm to some interest beyond reputation, such as a loss of present . . . government employment." *Jefferson*, 170 F. Supp. 3d at 205 (quotations omitted). Plaintiffs do not allege they were removed *because of* any defamatory statements by Defendants.

Finally, Plaintiffs have not shown Defendants' statements "hampered [their] future employment prospects." *Id.* (quotations omitted). "To infringe one's liberty, the effect of government action on future employment must extend beyond a disadvantage or impediment; it must 'foreclos(e) his freedom to take advantage of other employment opportunities.'" *Mazaleski*, 562 F.2d at 713 (quoting *Roth*, 408 U.S. at 573). Here, the statement in Plaintiffs' dismissal letters that Plaintiffs were being "removed from the federal service," *Doe* Compl. ¶¶ 95–96, 109; *Garman* Compl. ¶ 174, simply conveyed that they were being removed from their jobs with the federal government and were not, for example, being reassigned to other federal government jobs. The statement says nothing about whether Plaintiffs could obtain federal government jobs in the future and certainly did not "bar [them] from employment in the Executive Branch." *Doe* Compl. ¶¶ 123, 127; *Garman* Compl. ¶ 178; *see Langeman v. Garland*, 88 F.4th 289, 297 (D.C. Cir. 2023) (even where a plaintiff showed he "may very well be excluded from working with the FBI again," it "does not necessarily follow that he would be unable to find employment with any other federal agency indefinitely").

John Doe 1 alleges his removal from the FBI "is a hindrance to finding a new federal law enforcement position," *Doe* Compl. ¶ 123, but that alleged hindrance is from the fact of his

15

removal, not from any allegedly defamatory statement by Defendants.[5] Similarly, his alleged failure to obtain "a position at an independent regulatory organization" was not caused by Defendants' statements, but by information John Doe 1 chose to share during an interview and by "public reporting about [his] firing." *Doe* Compl. ¶¶ 124–25. There is also no indication that John Doe 1's inability to obtain "an independent consulting opportunity in his field," *Doe* Compl. ¶ 126, was caused by Defendants' statements as opposed to, for example, the same reasons he did not get a position at the independent regulatory organization.

John Doe 2 alleges he "was interested in applying to work for Congress as a Capitol Police Investigator" but learned that "terminated FBI agents cannot join the Capitol Police as investigators." *Id.* ¶ 128. Thus, the fact of his removal from the FBI—not any allegedly defamatory statement by Defendants—was the reason he allegedly could not obtain this position.

For their parts, the *Garman* Plaintiffs have all found new employment. Garman "accepted a position as Of Counsel at a boutique bankruptcy and litigation firm," *Garman* Compl. ¶ 176— different from working at the FBI, but still a successful position in the legal field and hardly a financial hit. Plaintiffs Toleman and Ball also have new jobs, and although the jobs allegedly pay "a lesser salary," *id.* ¶¶ 183, 189–90, there is no indication those new salaries are substantially below their FBI salaries or that Toleman and Ball face any hindrance to obtaining other jobs in the future.

In sum, Plaintiffs fail to meet any of the requirements for a "reputation plus" claim.

**B.  Plaintiffs' "Stigma Plus" Theory Fails**

A "stigma plus" theory "differs from the [reputation-plus theory] in that it does not

---

[5] That "John Doe 1 sent his resume to the Securities and Exchange Commission ('SEC') Office of the Inspector General, and never heard back," *Doe* Compl. ¶ 123, does not show he cannot obtain federal employment.

depend on official *speech*, but on a continuing stigma or disability arising from official *action*" that "foreclosed the plaintiff's freedom to take advantage of other employment opportunities." *Jefferson*, 170 F. Supp. 3d at 205 (quoting *O'Donnell*, 148 F.3d at 1140). Such a governmental action "must involve a tangible change in status," which "may be shown in one of two ways." *Id.* (quoting *Kartseva v. U.S. Dep't of State*, 37 F.3d 1524, 1527 (D.C. Cir. 1994)). First, "if the government's actions 'formally or automatically exclude[d]' Plaintiff from future government employment opportunities—*e.g.*, by making 'a binding determination to disqualify' him from further employment." *Id.* (quoting *Kartseva*, 37 F.3d at 1528–29). Second, if the government's actions "seriously affected, if not destroyed" the plaintiff's "ability to pursue his chosen profession." *Id.* (quoting *O'Donnell*, 148 F.3d at 1141–42).

Plaintiffs fail to show the required "tangible change in status." *Jefferson*, 170 F. Supp. 3d at 205 (quoting *Kartseva*, 37 F.3d at 1527). First, Defendants have not "'formally or automatically exclude[d]' Plaintiff[s] from future government employment opportunities." *Id.* (quoting *Kartseva*, 37 F.3d at 1528–29). As discussed above, the statement in Plaintiffs' dismissal letters that Plaintiffs were being "removed from the federal service," *Doe* Compl. ¶¶ 95–96, 109; *Garman* Compl. ¶ 174, says nothing about whether Plaintiffs could obtain federal government jobs in the future. It certainly is not "a binding determination to disqualify" Plaintiffs from future federal government employment. *Jefferson*, 170 F. Supp. 3d at 205 (quoting *Kartseva*, 37 F.3d at 1528–29).

Second, Defendants' actions have not "seriously affected, if not destroyed" Plaintiffs' "ability to pursue [their] chosen profession.'" *Id.* (quoting *O'Donnell*, 148 F.3d at 1141–42). Although the *Doe* Plaintiffs have so far allegedly failed to secure several jobs they applied for, they have not shown that this failure "result[ed] from the alleged stigma or disability" from

17

Defendants' actions, *Langeman*, 88 F.4th at 297, rather than other reasons, such as the mere fact of having been removed from the FBI. *See supra* pp. 15–16; *see McCormick*, 752 F.3d at 988 (rejecting the plaintiff's assertion of a "stigma aris[ing] from his having to tell prospective employers why he was fired," because "the only official act committed by the defendants is the termination" and "[t]he termination of an at-will employee is not sufficient to establish the deprivation of protected liberty interests"). And the *Doe* Plaintiffs have not shown they will be unable to obtain federal government jobs or other jobs within their chosen profession in the future. Although the dismissal letters criticize Plaintiffs' "job performance," they do not allege any "inherent" personal quality of Plaintiffs that would preclude future employment. *Harrison*, 815 F.2d at 1518; *see Mazaleski*, 562 F.2d at 714. Moreover, Defendants did not publicly disclose the letters and thus could not have interfered with Plaintiffs' ability to obtain state or local government jobs or jobs in the private sector. As for the *Garman* Plaintiffs, they have all found new employment and have not shown their "ability to pursue [their] chosen profession has been 'seriously affected, if not destroyed.'" *Jefferson*, 170 F. Supp. 3d at 205 (quoting *O'Donnell*, 148 F.3d at 1141–42).

Thus, Plaintiffs fail to meet the requirements for a "stigma plus" theory. Both theories having failed, Plaintiffs' Fifth Amendment claim based on deprivation of a liberty interest should be dismissed.

**IV.    The Court Lacks Jurisdiction over the *Garman* Plaintiffs' *Ultra Vires* and Legal Nullity Claim, and the *Garman* Plaintiffs also Fail to State a Claim for Relief**

Count IV of the *Garman* Complaint asserts a claim for "Ultra Vires Action in Violation of Constitutional and Statutory Authority and Legal Nullity." There is no legal basis for a standalone "legal nullity" claim. *Ultra vires* review has "extremely limited scope," and an *ultra vires* claim is "essentially a Hail Mary pass—and in court as in football, the attempt rarely

18

succeeds." *Changji Esquel Textile Co. v. Raimondo*, 40 F.4th 716, 721–22 (D.C. Cir. 2022) (quotations omitted). "To prevail on an *ultra vires* claim, the plaintiff must establish three things: (i) the statutory preclusion of review is implied rather than express; (ii) there is no alternative procedure for review of the statutory claim; and (iii) the agency plainly acts in excess of its delegated powers and contrary to a specific prohibition in the statute that is clear and mandatory." *Id.* at 722 (quotations omitted). "The third requirement is especially demanding. Only error that is patently a misconstruction of the Act, that disregards a specific and unambiguous statutory directive, or that violates some specific command of a statute will support relief." *Id.* (quotations omitted) (requiring an "extreme" violation of statute).

The Court lacks subject-matter jurisdiction over the *Garman* Plaintiffs' *ultra vires* claim because it is precluded by the CSRA. The CSRA creates an "integrated scheme of administrative and judicial review" of adverse employment actions, *United States v. Fausto*, 484 U.S. 439, 445 (1988), generally proceeding before the Merit Systems Protection Board and appealing to the U.S. Court of Appeals for the Federal Circuit, 5 U.S.C. § 7703. For non-constitutional employment-related claims, and with a few exceptions inapplicable here, review under the CSRA "is the exclusive avenue for suit even if the plaintiff cannot prevail in a claim under the CSRA." *Grosdidier v. Chairman, Broad. Bd. of Governors*, 560 F.3d 495, 497 (D.C. Cir. 2009); *see Fornaro v. James*, 416 F.3d 63, 67 (D.C. Cir. 2005) (Roberts, J.) ("what you get under the CSRA is what you get"). Plaintiffs are excluded from the CSRA, *see supra* pp. 8–9, but that determination by Congress "[i]s not an invitation to those employees to sue under other statutes but a 'manifestation of a considered congressional judgment that they should not have statutory entitlement to review.'" *Filebark v. U.S. Dep't of Transp.*, 555 F.3d 1009, 1013 (D.C. Cir. 2009) (quoting *Fausto*, 484 U.S. at 448–49). In sum, because the CSRA is both a comprehensive *and* an

19

exclusive scheme for redressing personnel actions based on alleged misconduct, Plaintiffs'

exclusion from the CSRA not only means they cannot bring claims under the review scheme

created by the CSRA; it precludes them from challenging employment decisions on any basis

other than the Constitution. *See Lamb v. Holder*, 82 F. Supp. 3d 416, 421 (D.D.C. 2015)

(explaining that a former FBI employee "is excluded from the CSRA provisions regarding

termination, and therefore his termination is not subject to judicial review").

An *ultra vires* claim must be based on a violation of statute. *Changji Esquel Textile*, 40

F.4th at 721–22. Thus, it is among the nonconstitutional claims that are precluded by the CSRA.

*See Grosdidier*, 560 F.3d at 497; *Filebark*, 555 F.3d at 1013; *Lamb*, 82 F. Supp. 3d at 421. The

*Garman* Plaintiffs' *ultra vires* claim should therefore be dismissed for lack of subject-matter

jurisdiction.

Even if the Court had jurisdiction, the *Garman* Plaintiffs have failed to state a plausible

claim for relief. An *ultra vires* claim requires that Defendants acted "contrary to a specific

prohibition in the statute that is clear and mandatory." *Changji Esquel Textile*, 40 F.4th at 722

(quotations omitted). Yet, although the *Garman* Plaintiffs refer to a violation of "statutory

authority" in the title of Count IV, none of the allegations in Count IV identify any statute that

was violated. *Garman* Compl. ¶¶ 228–35. As discussed above, the CSRA affords Plaintiffs no

statutory removal protection. Although the *Garman* Plaintiffs allege that Director Patel did not

have authority to remove them under Article II of the U.S. Constitution, *id.*, an *ultra vires* claim

requires a violation of *statute*, which has not been alleged. *Changji Esquel Textile*, 40 F.4th at

722.

Even if the Court considered the *Garman* Plaintiffs' Article II argument, it is meritless on

its own terms. Article II vests the President with "[t]he executive Power" and directs him to

20

ensure the law is faithfully executed. *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 203 (2020). The President, of course, must rely on others to assist him in executing the laws. *See id.* at 204 ("[T]he Framers expected that the President would rely on subordinate officers for assistance."); *Printz v. United States*, 521 U.S. 898, 922 (1997) (explaining that the President fulfills his duties under the Take Care Clause both "personally and through officers whom he appoints"); *In re Grand Jury Investigation*, 315 F. Supp. 3d 602, 666–67 & n.51 (D.D.C. 2018), *aff'd,* 916 F.3d 1047 (D.C. Cir. 2019) (collecting cases). To ensure that those officers faithfully execute the laws, the President "as a general matter" has "authority to remove those who assist him in carrying out his duties." *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 513–14 (2010). "Without such power, the President could not be held fully accountable for discharging his own responsibilities; the buck would stop somewhere else." *Id.* at 514.

While "all of" the "executive Power" is vested in the President, *Seila Law*, 591 U.S. at 203, the heads of departments—and inferior officers below them—may also properly exercise that power on his behalf. *See* U.S. Const., art. II, § 2, cl. 2 (providing that the heads of departments may appoint inferior officers). As those officials exercise executive power, their acts are attributable to the President. *See, e.g., Printz,* 521 U.S. at 922 (the President fulfills his duties under the Take Care Clause both "personally and through officers whom he appoints"); *Wilbur v. United States ex rel. Barton*, 46 F.2d 217, 219 (D.C. Cir. 1930) ("It is settled law that 'the [P]resident speaks and acts through the heads of the several departments in relation to subjects which appertain to their respective duties' and that 'the acts of the heads of departments, within the scope of their powers, are in law the acts of the President.'" (quoting *Wilcox v. Jackson*, 38 U.S. (13 Pet.) 498, 513 (1839); *Wolsey v. Chapman*, 101 U.S. 755, 769 (1879)) (internal citations

21

omitted)), *aff'd*, 283 U.S. 414 (1931).

Here, the President had authority under Article II to remove Executive Branch employees, and his subordinates could exercise that authority on the President's behalf. Thus, even if the *Garman* Plaintiffs' Article II argument were the proper subject of an *ultra vires* claim, it would fail.

## V.       The *Garman* Plaintiffs' Declaratory Judgment Act Claim Should Be Dismissed

Count V of the *Garman* Complaint asserts a "Declaratory Judgment Act" claim, alleging the *Garman* Plaintiffs "are entitled to declaratory relief on the basis of all claims identified." *Garman* Compl. ¶ 237. But a separate declaratory judgment "count" is a misnomer. The Declaratory Judgment Act provides for a particular type of remedy in civil cases but does not give rise to a cause of action or create an independent source of federal jurisdiction. *Metz v. BAE Sys. Tech. Sols. & Servs.*, 774 F.3d 18, 25 n.8 (D.C. Cir. 2014). Thus, there is no freestanding basis for the Court to "declare" that Defendants have violated the law. Count V should be dismissed.

CONCLUSION

For the foregoing reasons, the Court should dismiss the *Doe* Complaint for failure to state a claim and the *Garman* Complaint for lack of subject-matter jurisdiction and failure to state a claim.

June 18, 2026                          Respectfully submitted,

                                       BRETT A. SHUMATE
                                       Assistant Attorney General

                                       CHRISTOPHER HALL
                                       Assistant Branch Director

22

*/s/ Isaac C. Belfer*
ISAAC C. BELFER (D.C. Bar No. 1014909)
Trial Attorney
Federal Programs Branch
Civil Division
U.S. Department of Justice
1100 L Street, NW
Washington, DC 20005
(202) 305-7134
(202) 514-8742 (fax)
Isaac.C.Belfer@usdoj.gov

*Counsel for Defendants*

23